# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JOSEPH OROSCO,

        Plaintiff,

-vs-                                    Case No. 08-cv-00833

JOANNE SWYERS,

        Defendant.

## DECISION AND ORDER

The plaintiff, Joseph Orosco, who is currently incarcerated at the Waupun Correctional Institution, filed this *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. He is proceeding *in forma pauperis* on Fifth Amendment and substantive due process claims based on allegations that the defendant, Joanne Swyers, interrogated him about a criminal matter without advising him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). The defendant has filed a motion for summary judgment, which will be addressed herein.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis.

1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of showing the needlessness of trial – (1) the absence of a genuine issue of material fact; and (2) an entitlement to judgment as a matter of law – is upon the movant. However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Id.* at 267; *see also Celotex Corp.*, 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . ."); Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleadings; rather its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial"). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## II. FACTS[1]

The plaintiff alleges that on January 29, 1998, he was seventeen years old and

---

[1] Facts are taken from the Defendant's Proposed Findings of Fact, the Plaintiff's Proposed Findings of Fact, and the Supplemental Affidavit of Joanne Swyers.

2

incarcerated at Waupun Correctional Institution (WCI). On that date, the plaintiff alleges he was escorted in handcuffs attached to a waistbelt to the security office where the defendant and DOC Captain Muraski "interrogated" him regarding a criminal matter. The plaintiff alleges that he made inculpatory statements though he was not advised of his "*Miranda* rights," and that a criminal complaint was filed in Dodge County Case Number 98CF239 on October 5, 1998, charging him with felony intimidation of a victim. This criminal complaint was dismissed and the plaintiff was then charged on December 1, 1998, with felony intimidation of a victim as a repeater in Dodge County Case Number 98CF291 based on his inculpatory statements. The plaintiff alleges that on June 2, 1999, the state court conducted an evidentiary hearing to determine if his statements should be suppressed due to the alleged *Miranda* violation. The state court granted the motion to suppress on August 25, 1999. The plaintiff alleges that on September 9, 1999, the prosecutor moved to withdraw the criminal charge in 98CF291 due to a lack of evidence and the court granted the motion on September 13, 1999. Based on his allegations, the plaintiff claims that, (1) the defendant "violated the constitutional rule of *Miranda*"; (2) his Fifth Amendment rights were violated when judicial proceedings were initiated against him based on his statement; and (3) he was denied substantive due process when the defendant interrogated him at the age of seventeen while he was restrained without providing a *Miranda* warning.

The defendant has worked as a law enforcement officer for the Dodge County Sheriff's Department since 1989. At all times relevant, the defendant held the rank of

3

Detective and she now holds the rank of Detective-Lieutenant. The defendant worked as a Prison Investigator within the Dodge County Sheriff's Department from 1995 to 1999, conducting investigations regarding a variety of matters arising in the four Wisconsin Department of Corrections (DOC) facilities located within Dodge County, including such matters as introduction of contraband, sexual assaults, battery of facility staff, and criminal enterprises.

The plaintiff's date of birth is February 28, 1980 and he therefore attained the age of eighteen on February 28, 1998. The defendant interviewed the plaintiff on January 29, 1998, in a conference room at WCI. Prior to the interview, the defendant determined that the plaintiff was incarcerated following his conviction on charges of first degree intentional homicide. During the course of the interview, the plaintiff stated that he was serving a life sentence.

The parties dispute certain aspects of the interview. The defendants' version of the interview will be set forth, followed by the plaintiff's version. According to the defendant, the plaintiff was not restrained during the interview. The defendant stated her purpose in interviewing the plaintiff and advised him that he was free to leave and did not have to speak with her. The room used for the interview was not selected to restrict the plaintiff's movement but rather was selected in consultation with DOC staff regarding available space. On the day of the interview, the defendant did not direct any correctional staff to restrain the plaintiff in handcuffs, to restrain the plaintiff in any other forms of

4

restraint, or to compel the plaintiff's presence or continued presence for the interview or in the interview room against his expressed willingness. The plaintiff was not restrained in handcuffs and a waistbelt at the time of the interview. The defendant does not recall the plaintiff asking, "Do I need an attorney or something?" during the interview. According to her practice and training, if the plaintiff had asked whether he needed an attorney, the defendant would have advised him that she could not provide him with legal advice and would have ceased asking him any questions. During the interview, the plaintiff did not ask to stop the interview, did not ask to leave the room, did not ask for any other individuals to be brought to the room, did not state he would not answer questions, and did not ask for an attorney to be present. The defendant did not instruct the plaintiff that he could not get up from his chair until escorted from his chair. At the time of the interview, the defendant was not aware of any bright line rule requiring *Miranda* warning to prisoners under circumstances presented. At the time of the interview, the defendant was proceeding based on guidance received from the Wisconsin Department of Justice regarding the warnings to be provided to convicted prisoners interviewed in their "home" DOC facility.

According to the plaintiff, on January 29, 1998, while incarcerated in the segregation unit at WCI, Officer Cunningham came to his cell door and ordered him to place his hands through the trap. The plaintiff complied and Officer Cunningham handcuffed his wrists together. Officer Cunningham told the plaintiff that a detective was there to see him and the plaintiff responded that he did not want to talk to any detective but he was told that

5

he did not have a choice. Officer Cunningham guided the plaintiff by his arm to the captain's office, ordered him to sit in a chair, and then left, closing the door behind him. DOC Captain Muraski and the defendant were seated in the captain's office when the plaintiff entered. At all times during the interrogation on January 29, 1998, and while the plaintiff was out of his segregation cell, he remained with his wrists handcuffed and secured to the front of the belt that was around his waist. Once the plaintiff was seated, the defendant proceeded to aggressively interrogate him about a crime that he was suspected of committing. At one point in the interrogation the plaintiff asked the defendant, "Do I need an attorney or something?" The defendant responded, "What for?", and then continued to interrogate him.

It is undisputed that in response to the interrogation, the plaintiff confessed to committing the crime that the defendant was investigating. It is also undisputed that at no time on January 29, 1998, did the defendant inform the plaintiff of his rights under *Miranda v. Arizona*. Following his confession, the plaintiff was charged with a felony on two separate occasions, and attended two initial appearances, a preliminary hearing, and several court appearances. On August 25, 1999, Dodge County Circuit Judge Daniel W. Klossner suppressed the plaintiff's statement and found that the defendant had violated the plaintiff's Fifth Amendment rights during the interrogation. Judge Klossner ruled in relevant part:

> In this case, the state concedes both the custody and interrogation prongs for *Miranda*. Instead, the issue presented by this case is whether the *Miranda* rule should apply to guards within the state prison system.
>
> In a recent case handed down by the Wisconsin Supreme Court,

6

the court held that, "a person who is incarcerated is per se in custody for purposes of *Miranda*." *State v. Armstrong*, 223 Wis. 2d 331, 355 (1999). Accordingly, the State concedes the Mr. Orosco was "in custody" for purposes of *Miranda* under current Wisconsin law. The Court agrees and finds that Mr. Orosco was in custody for *Miranda* purposes by virtue of his incarceration.

However, the State suggests that the decision in *Armstrong* should perhaps be revisited because it may lead to absurd results. Instead of a per se rule, the State suggests that a more practical "totality of circumstances" test should be utilized. The Court finds that even if a totality of circumstances test is applied, the facts of this case do not support a finding that Mr. Orosco was not in custody at the time of Det. Swyers' questioning. As previously stated, Mr. Orosco was in segregation at the time of the interview. He was escorted to the security office in belly chains and handcuffs. The escorting officer told him that he had no choice but to meet with the Detective. Although he was told by Det. Swyers that he did not have to speak with her, his placement in segregation placed serious limitations on his movement within the institution from which Mr. Orosco could reasonably conclude that he really was not free to leave. These facts reveal the type of situation which *Miranda* was designed to protect against. Even if his prison incarceration should not constitute per se custody, Mr. Orosco was taken out of his familiar surrounding to be escorted to the security office. He was also isolated from others when and left alone with Det. Swyers and Capt. Muraski [sic]. *See State v. Clappes*, 117 Wis. 2d 277, 282 (1984) ("The Supreme Court in *Miranda* dealt in main with the restricted and coercive atmosphere when the defendant is accompanied only by the police and is in isolation from others and the world in general and the psychological pressures thus placed upon the defendant.") Thus, even under a "totality of circumstances" rule, this is not a case which warrants a finding that Mr. Orosco was not in custody.

The State also argues that the prison authorities are not law enforcement officials who are required to provide *Miranda* rights at the time of the questioning. Ostensibly, the state argues

> that the prison authorities are incapable of acting in either a criminal investigation or a prosecutorial function. The Court fails to understand this argument as it relates to the facts of this case. It was Det. Swyers who was conducting the investigation at the prison in this case, not the prison authorities. It was also Det. Swyers who failed to read the *Miranda* warning. Det. Swyers is a detective from the Dodge County Sheriff's Office who was conducting a criminal investigation at the time the statements were made. This could not be a clearer case of someone acting in a law enforcement capacity.
>
> The Court also finds that Det. Swyers' questioning constituted "interrogation" under *Miranda*. In determining whether a police questioning constitutes an interrogation, the test is whether an objective observer could foresee that the officer's conduct would elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). "Incriminating response" means any response, whether inculpatory or exculpatory, that the prosecution might seek to introduce at trial. *Id.* at 301, n.5.
>
> As an initial matter, the state does not really contest the fact that Detective Swyers was conducting an interrogation of Mr. Orosco. Furthermore, although the state didn't introduce testimony of the exact questions asked by Det. Swyers, the Court nonetheless finds that her questioning was an interrogation. Det. Swyers admits that the purpose of her questioning was to investigate the allegations against Mr. Orosco. Additionally, she solicited information regarding his knowledge of the third party who was the perpetrator of the battery against the victim. She also solicited statement that Mr. Orosco admitted to talking with the victim as well as statements of Mr. Orosco calling the victim a "muck or a coon." From these facts, the Court can reasonably deduct that Det. Swyers questioning of Mr. Orosco was designed to elicit incriminating responses.
>
> Finally, since the Court will order that the statement must be suppressed because of the *Miranda* violation, the Court does not address the issue of whether the statements are voluntary.

(Pl. Exh. C. at 2-3.)

## III. ANALYSIS

**A. Substantive Due Process Claim**

The concept of substantive due process prevents the state from taking certain actions even if it provides procedural safeguards. *See County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998); *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997); *Daniels v. Williams*, 474 U.S. 327, 331 (1986); *Zinermon v. Burch*, 494 U.S. 113, 125 (noting that substantive due process violations are actionable under § 1983). "The nub of a substantive due process claim is that some things the state just cannot do, no matter how much process it provides." *Miller v. Henman*, 804 F.2d 421, 427 (7th Cir. 1986). Therefore, the right to substantive due process protects citizens against government conduct that is arbitrary or without reasonable justification. *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005). However, "only the most egregious official conduct" can be said to be arbitrary in the constitutional sense. *Lewis*, 523 U.S. at 846 (holding that a police officer did not violate the substantive due process rights of a passenger who died as a result of a high speed chase). "'Only the most egregious official conduct' is arbitrary in the constitutional sense." *Dunn v. Fairfield Comm. High Sch. Dist. No. 225*, 158 F.3d 962, 965 (7th Cir. 1998) (quoting *Lewis*, 523 U.S. at 845). To constitute a violation of substantive due process rights, the official conduct must "shock the conscience" because it is "unjustifiable by any governmental interest." *Remer v. Burlington Area Sch. Dist.*, 286 F.3d 1007, 1013 (7th Cir. 2002).

In *Chavez v. Martinez*, 538 U.S. 760, 779-80 (2003), the Supreme Court held that a suspect who was allegedly subjected to coercive interrogation after he had been shot by another officer had an arguable substantive due process claim. Upon remand, the Ninth Circuit Court of Appeals stated in relevant part:

> The Fourteenth Amendment's Due Process Clause protects individuals from state action that either "shocks the conscience," *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) or interferes with rights "implicit in the concept of ordered liberty," *Palko v. Connecticut*, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937). Martinez alleges that Chavez brutally and incessantly questioned him, after he had been shot in the face, back, and leg and would go on to suffer blindness and partial paralysis, and interfered with his medical treatment while he was "screaming in pain ... and going in and out of consciousness." Chavez allegedly continued this "interrogation" over Martinez's pleas for him to stop so that he could receive treatment. If Martinez's allegations are proven, it would be impossible not to be shocked by Sergeant Chavez's actions. A clearly established right, fundamental to ordered liberty, is freedom from coercive police interrogation. *See, e.g., Darwin v. Connecticut*, 391 U.S. 346, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1968); *Beecher v. Alabama*, 389 U.S. 35, 36, 88 S.Ct. 189, 19 L.Ed.2d 35 (1967); *Reck v. Pate*, 367 U.S. 433, 439-40, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961); *Leyra v. Denno*, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948 (1954); *Malinski v. New York*, 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029 (1945). Because, under the facts alleged by Martinez, Chavez violated Martinez's clearly established due process rights, *see Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), we affirm the district court's denial of qualified immunity to Chavez. The ultimate resolution of the merits of Martinez's Fourteenth Amendment claim will depend upon the resolution of contested facts. We leave that resolution to the district court.

*Martinez v. City of Oxnard*, 337 F.3d 1091, 1092 (9th Cir. 2003)

In this case, taking the facts in the light most favorable to the plaintiff, the defendant conducted an investigatory interrogation of him while he was handcuffed and without advising him of his *Miranda* rights. On the day of the interrogation, the plaintiff was seventeen years old. Following the interrogation, the plaintiff was charged with a felony in state court on two occasions, and attended two initial appearances, a preliminary hearing, and several court appearances. On August 25, 1999, the state court suppressed the plaintiff's statement, finding that the defendant violated the plaintiff's rights under the Fifth Amendment during the interrogation because of the *Miranda* violation.

Based on these facts, the defendant's conduct does not shock the conscience. The defendant's actions were related to a legitimate criminal investigation. She interrogated him, in the presence of another officer, in the captain's office. Moreover, taking as true the plaintiff's assertion that he was handcuffed during the interrogation as well as the undisputed fact that he was only seventeen years old at the time, these factors are less troubling given that the plaintiff had previously had the experience of being incarcerated in segregation in an adult institution following a conviction for first degree intentional homicide. The substantive due process doctrine is extremely limited in scope, and the defendant's alleged acts are simply insufficient to support a substantive due process violation. The defendant's conduct is far from police interrogation procedures that do violate the standard. *See Chavez*, 538 U.S. at 787 n.1 (citing *Darwin v. Connecticut*, 391 U.S. 346 (1968) (suspect interrogated for 48 hours incommunicado while officers denied access to counsel); *Beecher v. Alabama*,

389 U.S. 35, 36 (1967) (officer fired rifle next to suspect's ear and said "If you don't tell the truth I am going to kill you"); *Clewis v. Texas*, 386 U.S. 707 (1967) (suspect was arrested without probable cause, interrogated for nine days with little food or sleep, and gave three unwarned "confessions" each of which he immediately retracted); *Reck v. Pate*, 367 U.S. 433, 439-440 (1961) (mentally retarded youth interrogated incommunicado for a week "during which time he was frequently ill, fainted several times, vomited blood on the floor of the police station and was twice taken to the hospital on a stretcher")). Based on the foregoing, the plaintiff's substantive due process claim will be dismissed.

**B. Fifth Amendment Claim**

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that before police officers may interrogate a suspect who is in custody, they must inform the suspect of his right to remain silent and his right to an attorney. It is undisputed that the plaintiff was interrogated by the defendant on January 29, 1998 without being advised of his *Miranda* rights. In *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1026-1027 (7th Cir. 2006), the Seventh Circuit held that "where ... a suspect's criminal prosecution was not only initiated, but was commenced because of her allegedly un-warned confession, the 'criminal case' contemplated by the Self-Incrimination Clause has begun." *Id.* The court concluded that the use of an un-warned confession to find probable cause, set bail and arraign "allows a suit for damages under § 1983 ." *Id.* at 1027.

The defendant contends that she is entitled to judgment on grounds of qualified

12

immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, — U.S. —, 129 S.Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The defense of qualified immunity requires the court to determine whether the law was clearly established such that a reasonable government official would have known that the actions taken or not taken violated that right. *Id.* In determining whether a right is clearly established, the Court must look to controlling Supreme Court and Seventh Circuit precedent. *Baird v. Renbarger*, 576 F.3d 340, 345 (7th Cir. 2009). Once qualified immunity has been raised as an affirmative defense, the plaintiff has the burden of demonstrating that the defendant's error was clearly established. *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir.2008) (citations omitted).

In 1989, it was not clear that a failure to give a *Miranda* warning itself was a violation of a constitutional right, as opposed to simply being a ground for excluding evidence obtained from a suspect in a criminal case before the warning was given. At the time of the alleged violation, no opinion from the Supreme Court or the Court of Appeals for the Seventh Circuit held that a failure to give a *Miranda* warning violated a person's constitutional rights. *Thornton v. Buchmann*, 392 F.2d 870, 874 (7th Cir. 1968); *Locke v. Greer*, 963 F.2d 375, *1 (7th Cir. 1992) (unpublished) ("failure to give Miranda warnings is not cognizable under 42 U.S.C. § 1983"); *see also Warren v. City of Lincoln, Neb.*, 864

13

F.2d 1436, 1442 (8th Cir.1989) (remedy "for a *Miranda* violation is the exclusion from evidence of any compelled self-incrimination, not a section 1983 action"); *Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir. 1976).

In the absence of clear Supreme Court authority, a failure to give a Miranda warning was not clearly established as a constitutional violation until *Sornberger v. Knoxville*, 434 F.3d 1006 (7th Cir. 1006). Because it was not clearly established until 2006 that a failure to give a *Miranda* warning was a constitutional violation, the defendant is entitled to qualified immunity for his failure to give the plaintiff a *Miranda* warning on January 29, 1998.

### IV. ADDITIONAL MATTER

On July 29, 2010, the plaintiff filed a document requesting that the court compel the defendant to produce the names of inmates she previously interviewed, or alternatively, the name of every inmate whose refusal to be interviewed was honored by her. The court previously resolved a motion to compel filed by the plaintiff containing this discovery request. Moreover, any response to this discovery request that the defendant could provide would not be relevant to a resolution of this case.

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment (Docket #24) is **granted**.

**IT IS FURTHER ORDERED** that the plaintiff's renewal motion to compel (Docket #55) is **denied**.

14

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment dismissing the plaintiff's claims and this action.

Dated at Milwaukee, Wisconsin, this 8th day of September, 2010.

**SO ORDERED,**

*s/ Rudolph T. Randa*

**HON. RUDOLPH T. RANDA**
**U. S. District Judge**